UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE TRAVELERS INDEMNITY COMPANY
OF AMERICA,

                                        Plaintiff,

                        -against-                                        22-CV-01170-LTS

ACCREDITED SURETY AND CASUALTY
COMPANY, INC., and GREAT AMERICAN
INSURANCE COMPANY,

                                        Defendants.

---

<u>Memorandum Opinion and Order</u>

On August 24, 2022, The Travelers Indemnity Company of America ("Plaintiff")

filed an Amended Complaint in this action seeking a declaratory judgment against Defendants

Accredited Surety and Casualty Company, Inc. ("ASCC"), and Great American Insurance

Company ("GAIC") (together, "Defendants") as to their obligation to defend and indemnify

Travelers' named and additional insureds in an underlying state tort action.  (Docket entry no. 19

(the "Amended Complaint" or "AC").)  GAIC has also asserted a related counterclaim against

Travelers and a crossclaim against ASCC.  (Docket entry no. 25.)  The Court has jurisdiction of

this action pursuant to 28 U.S.C. section 1332.  Travelers has moved for partial summary

judgment concerning the duties of the respective insurers to defend certain parties in the

underlying state action, and Defendants have each cross-moved for summary judgment against

Travelers on the issues of defense and indemnification liability.  (Docket entry nos. 37, 42, 48.)

The Court has reviewed carefully the parties' submissions and, for the following

reasons, grants Travelers' motion for partial summary judgment in its entirety and denies

Defendants' cross motions for summary judgment.

BACKGROUND

The following facts are drawn from the record and are undisputed unless otherwise noted.  References to a party's Rule 56.1 Statement incorporate by reference the underlying evidentiary citations.

This insurance dispute arises out of a workplace injury that occurred on February 19, 2020 (the "Relevant Period"), when Milton Alfredo Barrera Orellana (the "Claimant") was struck by a falling brick while working as a bricklayer on the roof of 1274 Fifth Avenue, New York (the "Building").  (Docket entry no. 40 ("Travelers 56.1") ¶ 32.)  During the Relevant Period, Travelers issued a commercial general liability insurance policy for Reidy Contracting Group ("Reidy"); ASCC issued a commercial general liability insurance policy to H&L Ironworks Corp. ("H&L"); and GAIC issued a commercial general liability insurance policy to L.C.D. Elevator Repair Inc. ("LCD").  (Id. ¶¶ 1, 4, 10.)

During the Relevant Period, 5541-1274 Fifth Avenue Corp. (the "Owner," or "Fifth") contracted with various groups to perform construction work on the Building in connection with a comprehensive renovation project (the "Project").  (Id. ¶ 19.)  As part of that Project, Fifth entered into a Standard Abbreviated Form Agreement with LCD to perform "modernization and maintenance of one (1) passenger elevator" (the "Elevator Contract").  (Id. ¶ 14.)  Fifth separately entered into an Agreement for Construction Services (hereafter, the "Prime Contract") with Reidy, to oversee other aspects of the Project.  (Id. ¶ 19.)  Reidy subcontracted with H&L to perform certain structural steel work for the Project (the "Master Subcontract Agreement" or "MSA").  (Id. ¶¶ 21-27.)  H&L subcontracted with Touchstone Contracting, Inc. ("Touchstone") to complete work in connection with the Project (the "sub-subcontract").  (Id. ¶ 31.)  At the time of the accident on February 19, 2020, the Claimant

was employed by and performing work for Touchstone, as part of the sub-subcontract.  (Id. ¶ 32.)

After the accident, Touchstone generated an Incident Report on February 21, 2020 (the

"Touchstone Report") which describes the accident as follows,

> While laying bricks on the ground Milton was struck on the back by a
> cinderblock. It fell from an opening in the Elevator Machine Room. The
> block had been placed there by LCD Elevator to secure a plastic tarp.
> Milton remained on the ground while waiting on paramedics.

(Id. ¶¶ 46-48.)  Reidy also generated an accident report dated February 19, 2020 which states,

> Milton Barrera was laying brick around the new elevator shaft at bulkhead
> when a cinderblock fell from the opening in the elevator machine room.
> The cinderblock seemed to be placed by LCD elevator to keep plastic tarp
> from blowing around and keeping wind out of their workspace. The
> cinderblock struck Milton Barrera in the center of the back causing him to
> fall to the ground where he remained for about 15 minutes while waiting
> for medical personell [sic.] to respond.

(Id. ¶¶ 43-45.)

*ASCC Policy and the MSA*

The Commercial General Liability Policy issued on March 6, 2019, by ASCC to

H&L, No. 1-TPM-NY-17-01234880 (the "ASCC Policy"), provides coverage for bodily injury

that takes place during the policy period and is caused by an accident.  (Id. ¶¶ 4, 5.)  It contains a

section titled "Commercial General Liability Coverage Part," which states in relevant part:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) | Location(s) Of Covered Operations |
|---|---|
| As Required by Written Contract executed prior to any claim or "suit." | As Required by Written Contract executed prior to any claim or "suit." |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

> **A. Section II – Who Is an Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> 1. Your acts or omissions; or
> 2. The acts or omissions of those acting on your behalf; in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

(Id. ¶ 6; see also docket entry no. 38-10 ("ASCC Policy") at 34.)  The Policy also includes an endorsement, entitled "ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – AUTOMATIC STATUS FOR OTHER PARTIES WHEN REQUIRED IN WRITTEN CONSTRUCTION AGREEMENT" (the "2038 Endorsement"), which states:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> **A. Section II – Who Is an Insured** is amended to include as an additional insured:
>
> 1. Any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy; and
>
> 2. Any other person or organization you are required to add as an additional insured under the contract or agreement described in Paragraph 1. above. Such person(s) or organization(s) is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
>> a. Your acts or omissions; or
>> b. The acts or omissions of those acting on your behalf.
>
> in the performance of your ongoing operations for the additional insured.

(Travelers 56.1 ¶ 7; see also ASCC Policy at 39-40.)  Finally, the Policy provides that, with respect to "other insurance," the ASCC Policy is primary except under limited circumstances that ASCC concedes are not present in this case.  (Travelers 56.1 ¶¶ 8-9; see also docket entry no. 63 at 4.)

On September 21, 2013, H&L and Reidy entered into the MSA, under which H&L subcontracted to do certain steel work in connection with Reidy's contract with Fifth. (Travelers 56.1 ¶ 21; see also docket entry no. 38-14 (the "MSA").)  The MSA required that H&L maintain general commercial liability insurance in specific amounts, and to name the Owner and its Contractor (i.e., Fifth and Reidy) as additional insureds under that Policy. (Travelers 56.1 ¶ 26.)  It also included various provisions requiring that H&L maintain a safe work environment and take "full responsibility" for the "[s]afety of Subcontractor and its employees, including but not limited to safety equipment and instruction of its proper use, the protection of other persons and property, whether or not in common work areas, is the full responsibility."  (MSA at 5.)

*GAIC Policy and the Elevator Contract*

The Commercial General Liability Policy issued on March 8, 2019, by GAIC to LCD, No. GLP 1324367 02, provides coverage for accidental bodily injury that occurs during the policy period.  (Travelers 56.1 ¶¶ 10-13.)  The Policy contains an Endorsement entitled "ADDITIONAL INSURED – OWNERS, LESSES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION" (the "2010 Endorsement") which stated, in relevant part:

**Schedule**

| Name of Additional Insured Person(s) or Organization(s) |
| --- |
| ANY PERSON OR ORGANIZATION THAT YOU ARE REQUIRED AND AGREE TO NAME AS AN ADDITIONAL INSURED ON YOUR POLICY UNDER: |
|    1.  A WRITTEN CONTRACT OR AGREEMENT THAT IS IN EFFECT DURING THE TERM OF THIS POLICY AND SUCH CONTRACT IS ENTERED INTO PRIOR TO THE "OCCURRENCE" OF ANY "BODILY INJURY", "PROPERTY DAMAGE", "PERSONAL INJURY", OR "ADVERTISING INURY",<br>      OR<br>   2.  AN ORAL CONTRACT OR ORAL AGREEMENT WITH A PERSON OR ORGANIZATION WHEN A CERTIFICATE OF INSURANCE SHOWING THAT PERSON OR ORGANZATION AS AN ADDITIONAL INSURED HAS BEEN ISSUED; AND SUCH ORAL CONTRACT OR ORAL AGREEMENT IS IN EFFECT DURING THE TERM OF |

> THIS POLICY AND IS ENTERED INTO PRIOR TO THE "OCCURRENCE" OF ANY "BODILY INJURY", "PROPERTY DAMAGE", "PERSONAL INJURY", OR "ADVERTISING INURY",

**A. SECTION II – WHO IS AN INSURED** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1.      your acts or omissions; or
2.      the acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the Additional Insured(s) at the location(s) designated above.

[. . .]

**C**. With respect to the insurance afforded to these Additional Insureds, the following is added to SECTION III – LIMITS Of INSURANCE:

If coverage provided to the Additional Insured is required by a contract or agreement, the most we will pay on behalf of the Additional Insured is the amount of insurance:

1. required by the contract or agreement; or
2. available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

(Id. ¶ 12; see also docket entry no. 38-11 ("GAIC Policy") at 56-57.)  On January 11, 2019, LCD and Fifth entered into the Elevator Contract, which outlined the conditions under which LCD would install a new elevator in the Building.  (See docket entry no. 39-2 at 7-26 (the "Elevator Contract").)  The Elevator Contract had an integration clause which stated, "the Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations, or agreements, either written or oral.  The Contract may be amended or modified only by a Modification."  (Id. § 7.2.)  Article 17 of the Elevator Contract contained provisions requiring "the Contractor" (LCD) to "purchase and maintain insurance of

the types and limits of liability, containing the endorsements, and subject to the terms and

conditions, as described in Section 17.1 or elsewhere in the Contract Documents." (Id. § 17.1.1.)

The executed version of the contract, however, left blank the minimum coverage amounts

required. (Id. § 17.1.2.) As executed, the contract read:

> **§ 17.1.2** Commercial General Liability insurance for the Project written on
> an occurrence form with policy limits of not less than ($ ) each
> occurrence, ($ ) general aggregate, and ($ ) aggregate for products-
> completed operations hazard, providing coverage for claims including.
>
> .1    damages because of bodily injury, sickness or disease, including
>       occupational sickness or disease, and death of any person;
> .2    personal and advertising injury;
> .3    damages because of physical damage to or destruction of tangible
>       property, including the loss of use of such property;
> .4    bodily injury or property damage arising out of completed
>       operations; and
> .5    the Contractor's indemnity obligations under Section 9.15.

(Id.) Article 17 also includes a later provision stating:

> **§ 17.1.10** The Contractor shall provide certificates of insurance acceptable
> to the Owner evidencing compliance with the requirements in this Section
> 17.1 at the following times: (1) prior to commencement of the Work; (2)
> upon renewal or replacement of each required policy of insurance; and (3)
> upon the Owner's written request. An additional certificate evidencing
> continuation of liability coverage, including coverage for completed
> operations, shall be submitted with the final Application for Payment and
> thereafter upon renewal or replacement of such coverage until the
> expiration of the period required by Section 17.1.1. The certificates will
> show the Owner as an additional insured on the Contractor's Commercial
> General Liability and excess or umbrella liability policy.

(Id. § 17.1.10.) On June 10, 2021, LCD provided a Certificate of Insurance to Fifth, which lists

Fifth as an "additional insured" and specifies coverage limits of $1,000,000 per occurrence,

$4,000,000 general aggregate, and $4,000,000 for products-completed operations hazard.

(Travelers 56.1 ¶ 18; docket entry no. 39-3 at 13 (the "COI").)

*Procedural History*

In March 2020, the Claimant initiated two actions in state court, which have since been consolidated into one action (the "Underlying Action"), asserting various claims of negligence and violations of New York Labor Law against Fifth, Reidy, H&L,[1] and LCD.[2] (Travelers 56.1 ¶¶ 32-40; see also Orellana v. 5541-1274 Fifth Ave. Manhattan LLC, No. 152497/2020 (N.Y. Sup. Ct., filed Mar. 6, 2020).)  Travelers (which, as noted above, was Reidy's General Commercial Liability insurer) undertook to defend Reidy and Fifth in the Underlying Action.  (Travelers 56.1 ¶¶ 59, 61-63.)  On April 3, 2020, Travelers delivered a tender for additional insured coverage for both Reidy and Fifth under ASCC's insurance policies, asserting that such coverage is required by the terms of the Work Order and the MSA.  (Id. ¶ 50.)  ASCC denied this tender on May 22, 2020.  (Id. ¶ 51.)  Travelers contacted ASCC to request reconsideration of ASCC's May 22, 2020 denial on June 29, 2021, August 20, 2021, and September 15, 2021.  (Id. ¶¶ 52-53; docket entry no. 45 ("ASCC Counter-56.1") ¶¶ 52-55.) ASCC has not replied to any of the correspondence, nor has it assumed or contributed to the defense of Reidy or Fifth.  (Travelers 56.1 ¶¶ 54-55; ASCC Counter-56.1 ¶¶ 52-55.)

On November 24, 2020, Travelers delivered a tender for additional insured coverage for Fifth under GAIC's policy, asserting that such coverage is required by the Elevator Contract.  (Travelers 56.1 ¶ 56.)  GAIC denied this tender in June 2021, and has not assumed or contributed to the defense of Fifth in the Underlying Action.  (Id. ¶¶ 57-58.)

---

[1]  H&L was not added as a direct defendant in the Underlying Action until September 28, 2020.

[2]  The Claimant first sought to add LCD as a direct defendant in the Underlying Action on February 5, 2021.

The Underlying Action is ongoing.  (Id. ¶ 49; see also Orellana, No. 152497/2020.)  In connection with its defense of Reidy and Fifth in the Underlying Action, Travelers now moves for partial summary judgment, seeking (1) a declaration that ASCC has a primary duty to defend Reidy and Fifth in connection with the Underlying Action and that Travelers' coverage obligations are in excess of ASCC's, (2) a declaration that GAIC has a primary duty to defend Fifth in the Underlying Action and that Travelers' coverage obligation are excess to those of GAIC, and (3) an award of damages against Defendants for all sums paid in defense of Reidy and/or Fifth in the Underlying Action.  (Docket entry no. 37 ("Travelers MSJ").)  ASCC has cross-moved for summary judgment, seeking an inverse declaration that ASCC has no duty to defend or indemnify Reidy and Fifth in the Underlying Action.  (Docket entry no. 42 ("ASCC MSJ").)  GAIC has cross-moved for summary judgment, seeking an inverse declaration that GAIC has no duty to defend or indemnify Fifth in the Underlying Action. (Docket entry no. 47 ("GAIC MSJ").)  GAIC does not move for summary judgment on its crossclaims against ASCC.  (Id.)

## DISCUSSION

Summary judgment is to be granted in favor of a moving party "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A fact is considered material if it "might affect the outcome of the suit under the governing law," and an issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  To defeat a summary judgment motion, the

nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts and they may not rely on conclusory allegations or unsubstantiated speculation." Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) (citations omitted). The nonmoving party "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." Golden Pac. Bancorp v. F.D.I.C., 375 F.3d 196, 200 (2d Cir. 2004) (citation omitted). In a motion for summary judgment, however, all evidence must be viewed "in the light most favorable to the non-moving party," Nieblas-Love v. N.Y.C. Hous. Auth., 165 F. Supp. 3d 51, 64 (S.D.N.Y. 2016) (citation omitted), and the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003) (citation and quotation marks omitted). Where the party opposing summary judgment "fails to properly address [the moving] party's assertion of fact . . . the Court may . . . consider the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e)(2).

The same legal standards apply when analyzing cross-motions for summary judgment. Schultz v. Stoner, 308 F. Supp. 2d 289, 298 (S.D.N.Y. 2004). "[E]ach party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Morales v. Quintel Ent., Inc., 249 F.3d 115, 121 (2d Cir. 2001) (citation omitted).

The Court begins its analysis with the issue of each Defendant-insurer's duty to defend.

*ASCC's Duty to Defend*

In New York, the duty to defend is broader than the duty to indemnify and can be triggered even without a legal determination that the loss is covered such that the insurer will be required to indemnify.  See Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford, 64 N.Y.2d 419, 423 (1985).  To trigger an insurer's duty to defend, Travelers—as the party asserting coverage— has the burden of showing only that there is a "reasonable possibility" that the insurer "will have an indemnification obligation" based on the allegations of the Underlying Action.  Charter Oak Fire Ins. Co. v. Zurich Am. Ins. Co., 462 F. Supp. 3d 317, 326 (S.D.N.Y. 2020).  In other words, a declaration that an insurer is without the obligation to defend in the Underlying Action can be made "only if it could be concluded as a matter of law that there is no possible factual or legal basis on which [the insurer] might eventually be held to be obligated to indemnify [the insured] under any provision of the insurance policy."  Id. at 324 (quoting CGS Indus., Inc. v. Charter Oak Fire Ins. Co., 720 F.3d 71, 82 (2d Cir. 2013)) (emphasis in original).

ASCC must defend Fifth and Reidy if Travelers can establish: (1) that ASCC agreed to name Fifth and Reidy as additional insureds via a written contract that was executed before and in effect during the alleged accident, and (2) that the allegations of the Underlying Action show a "reasonable possibility" that, under the terms of the insurance agreement, ASCC may be obligated to indemnify Fifth and Reidy for the loss.  See Certain Underwriters at Lloyd's, London v. Travelers Cas. Ins. Co. of Am., 664 F. Supp. 3d 288, 292-93 (E.D.N.Y. 2023).  ASCC does not dispute that, under the terms of the Policy it issued to H&L, ASCC was obligated to provide commercial general liability coverage for "additional insureds" as required by written contract executed prior to any claim.  (ASCC Counter 56.1 ¶ 6; see also docket entry no. 44 ("ASCC Mem.").)  Nor does ASCC dispute that the MSA is enforceable, was executed prior to

the accident, and required H&L to name Reidy and Fifth as additional insureds.  (<u>Id.</u>; <u>see also</u>

MSA at 4.)  ASCC's defense, then, rests on whether the circumstances surrounding the accident,

as pleaded in the Underlying Action, fall within the ASCC Policy's scope of coverage.  The

ASCC Policy specifies that coverage for additional insureds is limited to liability "caused, in

whole or in part, by" the acts and omissions of H&L or the acts or omissions of those acting on

H&L's behalf:

> **A. Section II – Who Is an Insured** is amended to include as an additional
> insured the person(s) or organization(s) shown in the Schedule, <u>but only
> with respect to liability</u> for "bodily injury", "property damage" or
> "personal and advertising injury" <u>caused, in whole or in part, by</u>:
>
> 1. <u>Your acts or omissions; or</u>
> 2. <u>The acts or omissions of those acting on your behalf</u>; in the performance
> of your ongoing operations for the additional insured(s) at the location(s)
> designated above.

(ASCC Policy at 34 (emphasis added).)  New York Courts have interpreted virtually identical

policy language to provide coverage only where the acts or omissions of the named insured (or

its agent) are the proximate cause of the accident.  <u>Burlington Ins. Co. v. N.Y.C. Tr. Auth.</u>, 29

N.Y.3d 313, 321 (2017) (rejecting a laxer standard of "but-for" causation).

Therefore, ASCC's duty to defend Reidy and Fifth will only be triggered if there

is a "reasonable possibility" that the acts or omissions of H&L, or those acting on H&L's behalf,

were a proximate cause of the Claimant's injury.  This analysis ordinarily looks to the allegations

pleaded in the "four corners" of the underlying complaint.  <u>See</u> <u>Fitzpatrick v. Am. Honda Motor</u>

<u>Co.</u>, 78 N.Y.2d 61, 66 (1991).  An insurer may also incur a <u>broader</u> duty to defend outside of the

allegations plead in the underlying complaint if extrinsic evidence known to the insurer indicates

"a reasonable possibility of coverage."  <u>See</u> <u>id.</u> at 67.  Although extrinsic evidence known to the

insurer may <u>expand</u> an insurer's duty to defend beyond the scope of the allegations within the

four corners of the underlying complaint, the general rule is that "an insurer may not <u>avoid</u> its duty to defend by pointing to evidence outside of the Complaint that belies the Plaintiff's claims." <u>Ohio Sec. Ins. Co. v. Travelers Indem. Co. of Ct.</u>, No. 19-CV-1355-AJN, 2021 WL 797670, at *4 (S.D.N.Y. Mar. 1, 2021). A "narrow exception" to this general rule allows a defendant-insurer to present extrinsic evidence disproving its duty to defend when that extrinsic evidence is "unrelated to the merits of the plaintiff's action, [and] plainly take[s] the case outside the policy coverage." <u>Philadelphia Indem. Ins. Co. v. Streb, Inc.</u>, 487 F. Supp. 3d 174, 184 (S.D.N.Y. 2020) (quoting <u>Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.</u>, 363 F.3d 137, 148 (2d Cir. 2004)). Such extrinsic evidence cannot "overlap with the facts at issue in the underlying case." <u>Travelers Indem. Co. v. Harleysville Ins. Co. of N.Y.</u>, No. 18-CV-0600-PGG, 2020 WL 1304085, at *4 (S.D.N.Y. Mar. 19, 2020).

In the First Underlying Action (which has since been consolidated with the second), Claimant asserted various claims of negligence against H&L, Reidy, and Fifth. (Docket entry no. 38-20 (the "Amended First Underlying Complaint" or "AFUC").) Claimant alleged, <u>inter alia</u>, that H&L "had the duty to provide [the Claimant] with a safe place to work" and had the "non-delegable duty to see that the work site was kept reasonably safe and free of hazards to those workers lawfully there at." (<u>Id.</u> ¶¶ 64-65.) The Complaint goes on to allege that the Claimant was injured "by reason of the negligence of the defendant, its agents, servants and/or employees in the ownership, operation, direction, supervision . . . of the said premises," (<u>id.</u> ¶ 66), and that H&L (among others) "failed to provide [the Claimant] a safe place to work; failed to provide [the Claimant] with a hazard-free workplace; failed to provide [the Claimant] with proper and approved safety devices so placed, fixed and/or secured to afford proper protection," (<u>id.</u> ¶ 67). These allegations establish a "reasonable possibility" that H&L's acts

proximately caused Claimant's injury and that ASCC will accordingly be obligated to indemnify Reidy and Fifth.

ASCC argues that extrinsic evidence in the Underlying Action indicates that LCD was the "sole proximate cause" of the accident.  (ASCC Mem. at 16.)  In support, ASCC cites the two contemporaneous accident reports Touchstone and Reidy prepared, which both indicate that the brick that struck the Claimant was placed by employees of LCD to hold back a tarp, (Travelers 56.1 ¶¶ 43-48), as well as Claimant's state court deposition describing the accident, (docket entry no. 43-1 ("Claimant Dep.")).  The extrinsic evidence ASCC asks the Court to consider impermissibly goes to the merits of the claims against H&L in the Underlying Action; to credit it as grounds for relieving ASCC of the duty to defend would deprive ASCC's insured of the policy's promise of a defense against even meritless claims.  See Harleysville, 2020 WL 1304085, at *4; see also ASCC Policy at 22.  And, in any event, this evidence fails to establish to a legal certainty that the accident was "wholly" caused by LCD's negligence.  See Charter Oak, 462 F. Supp. 3d at 324.  The allegations of the Underlying Complaint, as well as the undisputed factual record before this Court, suggest there is a "reasonable possibility" that the Claimant was performing work on behalf of H&L's agent, Touchstone, as part of H&L's operations for Reidy and Fifth; that, under the Work Order and the MSA, H&L had an affirmative duty to oversee such work and provide a safe work space; and that H&L's failure to provide safe working conditions proximately caused the Claimant's injury.  It is of no significance, with respect to the duty to defend, that the accident may have been proximately caused, in whole or in part, by LCD's negligence.

The Court therefore finds that ASCC has a duty to defend its additional insureds, Reidy and Fifth, in the Underlying Action.

*GAIC's Duty to Defend*

As explained above, GAIC also has a duty to defend its alleged additional insured, Fifth, if there is a "reasonable possibility" that GAIC may be held to indemnify Fifth for the claim in the Underlying Action.  Charter Oak, 462 F. Supp. 3d at 324.  For GAIC to be held liable to Fifth as a purported additional insured, Travelers must show that two elements are satisfied.  First, Travelers "must establish that [LCD] agreed to name [Fifth] as [an additional insured] in a written contract, which was executed before and in effect during the accident." Certain Underwriters, 664 F. Supp. 3d at 292-93.  Then, Travelers must establish a "reasonable possibility" that, under the terms of the agreement, GAIC may be obligated to indemnify Fifth for the loss.  Id.  GAIC first argues that—even if Fifth qualifies as an additional insured—the Elevator Contract failed to require any coverage for Fifth.  GAIC next disputes that the allegations in the Underlying Complaint trigger its additional insured coverage under the Policy.

*Coverage Limits*

GAIC disputes that it is obligated to provide any coverage to Fifth as an additional insured based on the coverage limits imposed by the Policy and the Elevator Contract. The Policy GAIC issued to LCD contained a 2010 Endorsement providing for additional insured coverage for "any person or organization that [LCD is] required and agreed to name as an additional insured . . . under a written contract or agreement that is in effect during the term of this policy[.]"  (GAIC Policy at 56.)  The Endorsement also stated in relevant part:

> With respect to the insurance afforded to these Additional Insureds, the following is added to SECTION III – LIMITS Of INSURANCE:
>
> > If coverage provided to the Additional Insured is required by a contract or agreement, the most we will pay on behalf of the Additional Insured is the amount of insurance:

       1. <u>required by the contract or agreement</u>; or
       2. available under the applicable Limits of Insurance shown
       in the Declarations;

    whichever is less.

(GAIC Policy at 57 (emphasis added).)  GAIC asserts that this Endorsement means that Fifth can only be an additional insured entitled to policy coverage to the extent and up to the amounts required by the underlying service contract (the Elevator Contract).

       On January 11, 2019, LCD and Fifth executed the Elevator Contract, which set the terms of the work LCD would perform on the Project.  (Elevator Contract.)  Travelers asserts, and GAIC disputes, that the Elevator Contract also required that LCD purchase and maintain commercial liability insurance with Fifth as an additional insured.  Article 17 of the Elevator Contract provided that "[t]he Contractor shall purchase and maintain" "Commercial General Liability insurance for the Project," (<u>Id.</u> § 17.1.2), and that the Contractor will provide certificates of insurance "evidencing compliance with the requirements in this Section 17.1 . . . . The certificates will show the Owner [Fifth] as an additional insured on the Contractor's Commercial General Liability and excess or umbrella liability policy," (<u>id.</u> § 17.1.10).  However, the executed Elevator Contract left blank the minimum coverage amounts LCD was required to maintain for the Project.  (<u>Id.</u> § 17.1.2 (requiring that the Contractor maintain "Commercial General Liability insurance for the Project . . .  with policy limits of not less than ($ ) each occurrence, ($ ) general aggregate, and ($ ) aggregate for products-completed operations hazard[.]").)  GAIC asserts that this provision fails to specify the minimum liability insurance LCD was required to maintain, rendering unenforceable Article 17 of the Elevator Contract.  GAIC argues that this ambiguity in the underlying Elevator Contract—when read in conjunction with the "Limits of Insurance" in the 2010 Endorsement of GAIC's Policy—demonstrates that

GAIC had no obligation to provide <u>any</u> additional insured coverage for Fifth.  (Docket entry no. 50 ("GAIC Mem.") at 1-2.)

A blank space in a contract will not "vitiate the entire contract."  <u>Boyd v. Haritidis</u>, 657 N.Y.S.2d 463, 464-65 (N.Y. App. Div., 3d Dep't, 1997).  Where a completed contract has a provision containing a blank space, the contract provision "may be rendered inoperative and rejected as surplusage if the parties so intended . . . or the ambiguity 'may be cleared up in the construction of the contract by supplying the omitted words.'"  <u>Id.</u>  Under New York law, a court should construe ambiguities in a completed contract, where possible, to give effect to all terms of the agreement.  <u>See</u> <u>Gonzalez v. Don King Prods., Inc.</u>, 17 F. Supp. 2d 313, 317 (S.D.N.Y. 1998) (citing <u>Galli v. Metz</u>, 973 F.2d 145, 149 (2d Cir. 1992)).  Courts must interpret terms to give effect to the Parties' intention at the time of contracting.  <u>See</u> <u>RJE Corp. v. Northville Ind. Corp.</u>, 198 F. Supp. 2d 249, 262-63 (E.D.N.Y. 2002), <u>aff'd</u> 329 F.3d 310 (2d Cir. 2003).  Therefore, to give meaning to facially ambiguous terms, the Court may consider extrinsic evidence of the parties' intent.  <u>Id.</u>; <u>Boyd</u>, 657 N.Y.S.2d at 465.  When evaluating extrinsic evidence, the greatest weight is given to the Parties' practical construction of the ambiguous provision during the course of performance of the contract.  RESTATEMENT (SECOND) OF CONTRACTS § 203(b) (1981).  "Where an agreement involves repeated occasions for performance by either party . . . the performance that is accepted or acquiesced to without objection is given great weight in the interpretation of the agreement."  <u>New Windsor Volunteer Ambulance Corps, Inc. v. Meyers</u>, 442 F.3d 101, 112 (2d Cir. 2006) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 202(4)).

In the evidentiary record before the Court, the only relevant extrinsic evidence concerning the construction of Article 17 is the June 26, 2021 Certificate of Insurance that LCD

provided to Fifth.[3]  (See COI.)  The COI listed Fifth as a Certificate Holder under LCD's GAIC

Policy with coverage limits of $1,000,000 for each occurrence and $4,000,000 general aggregate

and aggregate for products-completed operations hazard.  (Id.)  While GAIC argues correctly

that the COI does not, itself, "confer . . . rights upon the certificate holder" (id.; see also docket

entry no. 57 ("GAIC Reply") at 6-7), the provision of the COI in the course of performance of

the Elevator Contract is relevant extrinsic evidence indicative of the original meaning of the

ambiguous provisions in Article 17 of the contract between LCD and Fifth.  Section 17.1.10 of

the Elevator Contract required that "[t]he Contractor [LCD] shall provide certificates of

insurance acceptable to the Owner [Fifth] evidencing compliance with the requirements in this

Section 17.1 [at various points during the course of performance.]"  (Elevator Contract

§ 17.1.10.)  Because LCD provided the COI, and Fifth accepted it without objection, the conduct

of the contracting parties shows that they intended Article 17 to obligate LCD to maintain

liability insurance for the Project in the amounts shown on the COI.

        In opposition, GAIC argues that a "reasonable mind" could conceive that LCD

and Fifth intended to render Article 17 inoperative by requiring minimum coverage amounts of

$0.00.  (GAIC Mem. at 9.)  GAIC's proffered interpretation strains credulity to the breaking

point.  GAIC offers no extrinsic evidence to support this interpretation, which would contradict

fundamental tenets of contractual construction by rendering large portions of the contract

meaningless.  See Galli, 973 F.2d at 149.  "[W]here language in a contract is ambiguous,

---

[3]    Although the COI was provided after the accident, section 17.1.10 of the Elevator
Contract required that LCD provide a COI to Fifth at multiple points during the
performance of the contract.  GAIC has not argued, and has provided no evidence to
show, that this COI was not representative of the COIs provided prior to commencement
of the Project or those provided during the Relevant Period.  (See GAIC Mem.; GAIC
Reply.)

summary judgment can be granted 'if the non-moving party fails to point to any relevant extrinsic evidence supporting that party's interpretation of the language.'" Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc., 232 F.3d 153, 158 (2d Cir. 2000) (citation omitted).  Given the uncontroverted factual record, the Court finds that Travelers is entitled to summary judgment on this issue and concludes that the contracting parties' manifest intention was to require limits of insurance equal to GAIC's policy limits, as represented in LCD's June 26, 2021 Certificate of Insurance.  Therefore, under the terms of GAIC's 2010 Endorsement, GAIC is required to provide coverage to Fifth, to the extent Fifth qualifies as an additional insured, up to the limits of the Policy.

*Reasonable Possibility of Indemnification*

Next, GAIC argues that its duty to defend Fifth as an additional insured has not been triggered based on the allegations pleaded in the Underlying Complaint.  The terms of GAIC's Policy that outline the limits and circumstances of its Additional Insured coverage are substantially similar to those of the ASCC Policy.  GAIC's 2010 Endorsement states, in relevant part:

**Schedule**

| Name of Additional Insured Person(s) or Organization(s) |
| --- |
| ANY PERSON OR ORGANIZATION THAT YOU ARE REQUIRED AND AGREE TO NAME AS AN ADDITIONAL INSURED ON YOUR POLICY UNDER:<br>1.  A WRITTEN CONTRACT OR AGREEMENT THAT IS IN EFFECT DURING THE TERM OF THIS POLICY AND SUCH CONTRACT IS ENTERED INTO PRIOR TO THE "OCCURRENCE" OF ANY "BODILY INJURY", "PROPERTY DAMAGE", "PERSONAL INJURY", OR "ADVERTISING INJURY",<br>    OR<br>2.  AN ORAL CONTRACT OR ORAL AGREEMENT WITH A PERSON OR ORGANIZATION WHEN A CERTIFICATE OF INSURANCE SHOWING THAT PERSON OR ORGANZATION AS AN ADDITIONAL INSURED HAS BEEN ISSUED; AND SUCH ORAL CONTRACT OR ORAL AGREEMENT IS IN EFFECT DURING THE TERM OF THIS POLICY AND IS ENTERED INTO PRIOR TO THE "OCCURRENCE" OF ANY |

> "BODILY INJURY", "PROPERTY DAMAGE", "PERSONAL INJURY", OR
> "ADVERTISING INURY",

> **A. SECTION II – WHO IS AN INSURED** is amended to include as an
> additional insured the person(s) or organization(s) shown in the Schedule,
> but only with respect to liability for "bodily injury", "property damage" or
> "personal and advertising injury" caused, in whole or in part, by:
>
> 1.  your acts or omissions; or
> 2.  the acts or omissions of those acting on your behalf;
>
> in the performance of your ongoing operations for the Additional
> Insured(s) at the location(s) designated above.

(GAIC Policy at 56-57.)  GAIC correctly asserts that Section A must be interpreted to mean that

Fifth only qualifies as an additional insured under the Policy with respect to liability proximately

caused by LCD's acts or omissions.  See Burlington Ins., 29 N.Y.3d at 321.  GAIC errs, however,

in its assertion that Travelers must prove LCD's culpability in order to trigger GAIC's duty to

defend.  (GAIC Mem. at 11.)  As explained above, GAIC has a duty to defend Fifth in the

Underlying Action if there is even a "reasonable possibility" of coverage.  CGS Indus., Inc., 720

F.3d at 82.  Here, that analysis is straightforward.  The Underlying Complaint includes numerous

specific allegations that—if proven—would open Fifth to liability premised on LCD's negligent

acts.  (See generally docket entry no. 38-23 (the "Second Underlying Complaint" or "SUC"); see

also docket entry no. 38-25 ("Consolidation Order").)  Additionally, extrinsic evidence known to

GAIC implicates more than a "reasonable possibility" of LCD's culpability.  Fitzpatrick, 78

N.Y.2d at 70 (requiring that "an insurer [provide] a defense where, notwithstanding the

complaint allegations, underlying facts made known to the insurer create a 'reasonable

possibility that the insured may be held liable for some act or omission covered by the policy'"

(internal citation omitted)).  Both contemporaneous accident reports indicate that the Claimant

was injured due to a falling brick placed by the employees and agents of LCD.  (Docket entry no.

38-16 at 31, 33.)  GAIC offers no alternative argument that the accident falls outside the scope of its Additional Insured Policy, other than by contesting the merits of the Claimant's case (GAIC Mem. at 11-12), which is not a permissible consideration for this Court at this stage.  Cf. Harleysville, 2020 WL 1304085, at *4.  These circumstances establish a "reasonable possibility" that GAIC may eventually be obligated to indemnify Fifth under the terms of the Policy. Therefore, the Court finds that GAIC has a duty to defend Fifth as an additional insured in the Underlying Action.

<em><u>Cost-Sharing and Indemnification</u></em>

Having found that both ASCC and GAIC have a duty to defend Fifth as an additional insured, and that ASCC has a duty to defend Reidy as an additional insured, the Court next turns to the question of how those coverage obligations are to be shared.  Travelers asserts, and ASCC has conceded, that ASCC's and GAIC's obligations are primary, and that Travelers' obligations are in excess.  (See Travelers Mem.; docket entry no. 63 ("ASCC Supp. Mem.").) GAIC, however, asserts that its obligation is primary, is shared on a primary basis with both Travelers and ASCC, and should be apportioned based on respective liability limits.  (Docket entry no. 64 ("GAIC Supp. Mem.").)  GAIC argues that all three policies contain "substantively identical excess clauses," and therefore cancel each other out, leaving each policy to cover the loss on a shared, primary basis.  (Id. at 1, 3.)  GAIC's analysis overlooks a critical difference in the language of Travelers' excess policy.  ASCC's and GAIC's policies each contain excess clauses specifying that their policies are excess over "any other primary insurance available to you . . . as an additional insured."  (ASCC Policy at 14; GAIC Policy at 105-106.)  Both Policies define "you" to refer only to the "the <u>named insured</u>," meaning H&L and LCD, respectively.

(ASCC Policy at 3 (emphasis added); GAIC Policy at 92 (emphasis added).)  Therefore, this clause would not apply to the coverage ASCC and GAIC owe to Reidy and/or Fifth because neither Reidy nor Fifth is a named insured under the policies.  (Docket entry no. 66 ("Travelers Supp. Mem."); ASCC Supp. Mem.)  The Travelers Policy, however, provides that its insurance is excess over "any other insurance . . . that is available <u>to the insured</u> when the insured is an additional insured . . . under such other insurance."  (Docket entry no. 38-4 at 10 (emphasis added).)  By virtue of this language, the Travelers excess clause applies to its additional <u>and</u> named insureds (Fifth and Reidy, respectively), and any coverage obligation to those insureds is in excess to the additional insured coverage provided by ASCC and/or GAIC.  (<u>See</u> docket entry no. 38-3 at 25 (defining "insured" under the Travelers policy as "any person or organization qualifying as such under Section II – Who Is An Insured").)  Therefore, the Court finds that ASCC's coverage obligation for Reidy is primary and Travelers' coverage obligation is in excess. The Court additionally finds that GAIC and ASCC share a primary coverage obligation with respect to Fifth, and that Travelers' coverage is in excess.

GAIC next argues that, if it is found to have any coverage obligation with respect to Fifth, the coverage costs should be apportioned on a pro rata basis based on the Policies' respective coverage limits.  (GAIC Supp. Mem. at 6.)  ASCC and GAIC's policies each have identical "Method of Sharing" provisions which specify that, "[i]f all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first."  (GAIC Policy at 106; ASCC Policy at 14.)  Therefore, the

Court further finds that ASCC and GAIC must contribute equally on a shared, primary basis to the defense of Fifth, until the insurance limits under each policy are reached.[4]

ASCC must reimburse Travelers for all expenses incurred in the course of defending Reidy in the underlying action, and ASCC and GAIC must jointly reimburse Travelers for all expenses incurred in the course of its defense of Fifth in the Underlying Action.  Because ultimate liability has not yet been determined in the Underlying Action, any finding as to the Defendant-Insurers' duty to indemnify Reidy and/or Fifth would be premature at this stage.[5]  See Lexington Ins. Co. v. Kiska Dev. Grp. LLC, 122. N.Y.S.3d 590, 593 (N.Y. App. Div., 1st Dep't, 2020).  The Court therefore denies the ASCC and GAIC motions without prejudice to litigation of any issues relating to indemnification at an appropriate time.

CONCLUSION

For the foregoing reasons, Travelers' motion for partial summary judgment is granted in its entirety.  The Court hereby declares that:

1.  Defendant Accredited Surety and Casualty Company, Inc. ("ASCC") has a duty to defend Reidy Contracting Group, LLC ("Reidy") and 5541-1274 Fifth Avenue Manhattan LLC ("Fifth") in connection with the underlying personal injury action, Milton Alfredo Barrera Orellana v. 5541-1274 Fifth Avenue

---

[4]    GAIC's crossclaim against ASCC seeks a declaratory judgment that any obligation GAIC is found to have to cover Fifth is shared equally with ASCC.  (Docket entry no. 25 ¶ 22.) Although GAIC has not moved for summary judgment on this claim (see GAIC MSJ), by resolution of Travelers' partial motion for summary judgment, GAIC's crossclaim against ASCC has also been resolved.  The Court therefore dismisses that crossclaim as moot.

[5]    Although Travelers did not move for summary judgment on the question of the Defendants' duty to indemnify, ASCC and GAIC each moved for a declaration that they have no duty to indemnify in their cross motions for summary judgment.

<u>Manhattan LLC</u>, No. 152497/2020 (N.Y. Sup. Ct. filed Mar. 6, 2020) (the "Underlying Action").  ASCC's coverage obligations to Reidy and Fifth in connection with the Underlying Action are primary, and Travelers' coverage obligations are excess to those of ASCC with respect to that Underlying Action.

2. Defendant Great American Insurance Company ("GAIC") has a duty to defend 5541-1274 Fifth Avenue Manhattan LLC in connection with the Underlying Action.  GAIC's coverage obligations to Fifth in connection with the Underlying Action are primary, and Travelers' coverage obligations are excess to those of GAIC's with respect to the Underlying Action.

3. Travelers is entitled to an award against ASCC for all sums Travelers has paid in defending Reidy in the Underlying Action.

4. Travelers is entitled to an award against GAIC and ASCC for all sums Travelers has paid and may become obligated to pay to defend Fifth in the Underlying Action, to be apportioned equally between Defendants.

Travelers, ASCC and GAIC are directed to meet and confer to compute and make arrangements for payment of the amounts due to Travelers pursuant to the foregoing declarations and shall submit a proposed order to the Court within **60 days** from the date hereof.

ASCC and GAIC's cross motions for summary judgment are denied in their entirety, without prejudice to litigation of any issues relating to indemnification at an appropriate time.  GAIC's counterclaim against Travelers and crossclaim against ASCC are dismissed.

This case is hereby stayed, and the Clerk is respectfully directed to put it on the suspense calendar pending the resolution of the Underlying Action.  On March 31, 2025, and

each September 30 and March 31 thereafter, or 30 days after the resolution of the Underlying

Action, if earlier, the parties to this action must file a joint status report indicating the status of

the Underlying Action and what, if any, issues remain to be resolved by the Court.

This Memorandum Opinion and Order resolves docket entry nos. 37, 42, and 47.


SO ORDERED.

Dated: New York, New York
          September 24, 2024

                                      /s/ Laura Taylor Swain
                                     LAURA TAYLOR SWAIN
                                     Chief United States District Judge